FILED
United States Court of Appeals
Tenth Circuit

August 9, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID P. SCHERER; JOHN H.
LICHT; MIKE LOPEZ; BARBARA
BRICKLEY; and AARON JOHNSON,

      Plaintiffs - Appellants,

v.

UNITED STATES FOREST
SERVICE; GLENN P. CASAMASSA,
Forest Supervisor for Arapaho &
Roosevelt National Forest; and
DAVID GAOUETTE, United States
Attorney,[*]

      Defendants - Appellees.

No. 10-1418

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:08-CV-00917-MEH-KMT)**

Matt Kenna, Durango, Colorado (Mary Ellen Barilotti, Hood River, Oregon, with
him on the briefs), for Plaintiffs-Appellants.

Nicholas A. DiMascio, Attorney, Environment & Natural Resources Division
(Ignacia S. Moreno, Assistant Attorney General; Andrew C. Mergen, Attorney,
Environment & Natural Resources Division; and David C. Shilton Attorney,
Environment & Natural Resources Division, with him on the brief), United States
Department of Justice, Washington, D.C., for Defendants-Appellees.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2) David Gaouette is substituted as
United States Attorney for John F. Walsh.

Before **HARTZ, McKAY,** and **GORSUCH**, Circuit Judges.

**GORSUCH**, Circuit Judge.

Everyone enjoys a trip to the mountains in the summertime. One popular spot is Mount Evans — a fourteen thousand foot peak just a short drive from Denver and with a paved road that goes right to the summit. When the snow melts and the road thaws, the national forest around Mount Evans teems with hikers and sightseers eager to take in the breathtaking views. But first they have to stop and pay. That's because the Forest Service maintains an entrance station along the road where it charges many visitors what it calls an "amenity fee." Wanting everyone to be able to hike Mount Evans and take in its scenery without charge, the plaintiffs in this case ask us to strike down the Service's fee policy as *facially* inconsistent with Congress's directions, to hold it null and void in all applications. This, however, we agree with the district court we cannot do. For better or worse, the Legislature has said that the Service *may* — sometimes — charge visitors to Mount Evans. So *some* lawful applications of the policy do exist. But saying this much shouldn't be misconstrued as saying more. In rejecting the plaintiffs' facial challenge we hardly mean to suggest that the Service's policy can't be attacked at all. It might well be susceptible to a winning

challenge *as applied* to certain particular visitors, perhaps even the plaintiffs themselves.  But that's a path the plaintiffs haven't asked us to explore and so one we leave for another day.

As a general rule Congress has decreed that anyone may enter this country's great national forests free of charge.  *See* 16 U.S.C. § 6802(e)(2).  But in 2004 Congress included an important exception in what it called the Recreation Enhancement Act ("REA").  The REA allows the Forest Service to impose "amenity fees" in areas that "provide[] significant opportunities for outdoor recreation," where there are "substantial Federal investments" and certain "amenities" — amenities defined to include, among other things, interpretive exhibits, a permanent toilet, and security services.  *See* 16 U.S.C. § 6802(f).  Soon after the REA's adoption, the Forest Service invoked this very provision and adopted a "Mount Evans Clear Creek Ranger District Federal Lands Recreation Enhancement Act Implementation Plan" imposing an amenity fee at Mount Evans.

But not without stirring up a bit of controversy — controversy that ultimately led to this lawsuit.  David Scherer and his fellow plaintiffs are outdoor enthusiasts who enjoy visiting Mount Evans — or at least used to before the Forest Service started with this amenity fee business.  Now, they say, they pay the fee reluctantly, visit less frequently, and in some cases have risked criminal prosecution by refusing to pay.  Citing these harms, Mr. Scherer brought suit seeking a declaration that the Service's Implementation Plan is unlawful.  But the

district court entered judgment for the Forest Service all the same, and it is this that Mr. Scherer seeks to undo on appeal.

How? Proceeding under the Administrative Procedures Act ("APA"), Mr. Scherer says the Forest Service's Implementation Plan exceeds the statutory authority given to the Service by Congress in the REA. *See* 5 U.S.C. § 706. He draws our attention to § 6802(d)(1), noting that the statute prohibits the Service from "charg[ing] . . . [s]olely for parking, undesignated parking, or picnicking along roads or trailsides[,] . . . [f]or persons who are driving through, walking through, boating through, horseback riding through, or hiking through Federal recreational lands and waters without using the facilities and services[,] . . . [f]or camping at undeveloped sites[,] . . . [or] [f]or use of overlooks or scenic pullouts." 16 U.S.C. § 6802(d)(1)(A), (D), (E), & (F). Yet, Mr. Scherer says, the Implementation Plan disregards these legislative limits by sometimes charging people who seek to do only these things. In this way, he says, the Implementation Plan exceeds the Forest Service's statutory mandate.

But Mr. Scherer and his fellow plaintiffs don't seek to enjoin enforcement of the Implementation Plan only as to them and their particular circumstances — the hallmark of an as-applied challenge. *See Reno v. Flores*, 507 U.S. 292, 300 (1993) (an as-applied challenge is limited to review of how the regulation or statute has been "applied in a particular instance"); *Colo. Right to Life Comm., Inc. v. Coffman*, 498 F.3d 1137, 1146 (10th Cir. 2007) (an as-applied challenge is

- 4 -

limited to testing "the application of [a regulation or statute] to the facts of a plaintiff's concrete case"). Instead, they seek a ruling that the Implementation Plan violates the rights of the public and that strikes down the Plan for the benefit of all. *See*, *e.g.*, Aplt. App. at 37, 39 (complaint seeking a declaration that the Implementation Plan "exceeded the scope of [the Service's] legislative authority" and asking the court to "[e]njoin the Service from any further implementation of its policy and from posting signs that mislead the public" and "[r]etain jurisdiction over this matter to ensure that the Service complies with the provisions of the REA").

By proceeding in this fashion — by asking us only to decide whether the Implementation Plan is facially invalid, that is invalid as applied to more than them and their particular circumstances — the plaintiffs have set before themselves a formidable task. To prevail in this and any facial challenge to an agency's regulation, the plaintiffs must show that there is "no set of circumstances" in which the challenged regulation might be applied consistent with the agency's statutory authority. *See Reno*, 507 U.S. at 301; *Pub. Lands Council v. Babbitt*, 167 F.3d 1287, 1293 (10th Cir. 1999).

And this is a demanding standard Mr. Scherer and his colleagues simply cannot meet. Under the Implementation Plan, the Forest Service charges a fee for entering an area where, by everyone's admission, the Service provides various amenities and services for which a fee may be lawfully charged under § 6802(f).

- 5 -

And in this area, the amenities come as a sort of package deal: paying the fee entitles a visitor to use them as much or as little as she chooses. So whether this results in the Forest Service charging for an activity that's supposed to be free under § 6802(d)(1) depends on what a particular visitor *chooses to do*. If a visitor drives close enough to Mount Evans, parks to have a picnic on the side of the road, and then calls it a day, she'll have paid the amenity fee only for picnicking and undesignated parking — activities for which no fee is supposed to be charged under § 6802(d)(1). But if that same visitor lingers a bit longer and stops by the nature center, she'll have paid a fee that the REA expressly allows the Service to charge. And the record shows that many paying visitors *do* take advantage of legally chargeable amenities while at Mount Evans. In fact, the Forest Service estimates (and Mr. Scherer does not contest) that in 2007 over 22,000 people visited the nature center or received information from interpretative guides. Aple. Supp. App. at 49. Another 900 received roadside assistance from the Forest Service's security patrol. *Id.* All these visitors did more than partake of § 6802(d)(1)'s freebies — they availed themselves of Mount Evans's federally furnished (and legally chargeable) "amenities." So it's just not the case that *every time* the Forest Service collects the amenity fee it exceeds its statutory authority. And given this, Mr. Scherer can't meet the burden of showing that there are *no set of circumstances* where the Implementation Plan's fee is lawfully collected.

Rather than dispute any of this, rather than try to surmount the difficulties of a facial challenge, Mr. Scherer suggests that our usual standard for facial challenges shouldn't apply in his case. He begins by arguing that having to carry the burden ordinarily imposed on a facial challenge would render § 6802(d) a dead letter, that it would let the Forest Service flaunt the statute with impunity. But this simply is not so. Plenty of fee arrangements could violate § 6802(d)(1) on their face. Take, for example, a policy under which the Forest Service charged for access to an area that *only* included unimproved camping sites, or charged *extra* to park in undesignated areas even after the standard amenity fee had been paid. Those charges would violate § 6802(d)(1) under every possible scenario and so could be the subject of a winning facial challenge. And even the *current* Implementation Plan may be vulnerable to an *as-applied* challenge under § 6802. We do not pass on the issue today, but it seems an individual might have a good defense if he were prosecuted for participating in only those activities listed in § 6802(d)(1).

To this Mr. Scherer doesn't reply by suggesting that his suit involves an as-applied challenge. Instead, he asserts that we should treat his facial challenge with special solicitude because an as-applied challenge isn't practical or even possible here. It isn't, he says, because the Forest Service only issues informal warnings and never prosecutes violations of the Mount Evans Implementation Plan — a bluff tactic that coerces visitors to pay the fee while ensuring no one

will ever have standing to bring an as-applied challenge. But this argument rests on a false premise — that the only way a plaintiff can bring an as-applied challenge to a fee is by refusing to pay it and awaiting criminal prosecution. That's just not the law. To the contrary, and as we have previously held, *paying a fee* under protest itself can sometimes be enough to confer standing to challenge its collection. *See*, *e.g.*, *Schutz v. Thorne*, 415 F.3d 1128, 1133 (10th Cir. 2005). So if, as he alleges, Mr. Scherer is a "frequent visitor" who has "reluctantly paid the fees demanded of him," Aplt. App. at 21-22, he may *already* have standing to bring an as-applied challenge. The problem thus is less that he *can't* bring an as-applied challenge so much as it is that he *hasn't*.

Alternatively, Mr. Scherer calls on us to endorse a new and hybrid category of challenge that might be easier for him to pursue — something between a facial and an as-applied challenge that he calls a "site-specific" challenge. And to support his cause Mr. Scherer invokes *Colo. Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204 (10th Cir. 2006). In that case, however, we noted that the plaintiffs' challenge was strictly facial because they were contesting the terms of a nationally applicable regulation. *See id.* at 1212 n.2. We never said the opposite was true — we never even *implied* that a challenge to a "site-specific" final agency action (like the Mount Evans Implementation Plan) can't *also* be a facial one. Of course it can. The nature of a challenge depends on how the *plaintiffs* elect to proceed — whether they seek to vindicate their own rights based

- 8 -

on their own circumstances (as-applied) or whether they seek to invalidate an agency action based on how it affects them as well as other conceivable parties (facial). In this case, Mr. Scherer and his colleagues chose the latter course and we see no legal authority (or need) that might allow us to invent a third sort of hybrid challenge, mixing and matching bits of as-applied and facial rules just so one side might have a better time of it.

Still fighting settled law, Mr. Scherer draws our attention to *United States v. Arizona*, 641 F.3d 339 (9th Cir. 2011). He argues that case suggests an unlawful regulation shouldn't be sustained in a facial challenge simply because there might be some hypothetical "permissible applications of it." *Id.* at 346. In this way, Mr. Scherer hopes to flip the burden in his facial challenge so that the Forest Service must prove its regulation is *always* lawful rather than the plaintiffs having to prove it's *never* lawful. But *Arizona* effected no such reversal of settled law. To the contrary, in the very portion Mr. Scherer cites the Ninth Circuit acknowledged (just as we do today and has long been the law) that "the challenger must establish that no set of circumstances exists under which the Act would be valid." *Id.* at 345-46 (internal quotation omitted).

In a last try, Mr. Scherer seeks to expand the nature of his challenge. For the first time on appeal, he offers various other intriguing arguments as to why the Implementation Plan should not survive judicial scrutiny even in a facial challenge. He says, for example, that the Forest Service's explanations for its

current policy are self-defeating and internally inconsistent and thus arbitrary and capricious within the meaning of the APA. *See* 5 U.S.C. § 706(2)(A). But none of this is relevant to the legal theory the plaintiffs pursued in the district court — that the Implementation Plan exceeds the Forest Service's statutory authority under § 6802. If Mr. Scherer and his fellow plaintiffs now believe the Implementation Plan is facially invalid for some other reason, it's a possibility that — like the possibility of an as-applied challenge — they or others might seek to pursue in a future lawsuit. But we may not reverse the district court's judgment in *this* case based on theories coined for the first time only on appeal unless Mr. Scherer makes a showing of plain error — something he has not even attempted.

*Affirmed.*